UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Millie J. Pearce, | ) | C/A No. 5:12-1999-TLW-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Carolyn W. Colvin,[1] Acting Commissioner of Social Security Administration, | ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This appeal from a denial of social security benefits is before the court for a Report and Recommendation ("Report") pursuant to Local Civil Rule 73.02(B)(2)(a) (D.S.C.). Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). The issue before the court is whether the Commissioner's decision is supported by substantial evidence. For the reasons that follow, the undersigned recommends that the Commissioner's decision be reversed and remanded for further administrative action.

I.    Relevant Background

    A.    Procedural History

Plaintiff filed her application for SSI on July 23, 2008, alleging she became disabled on July 4, 1999. Tr. 111. Her application was denied initially and upon reconsideration. Tr. 45-50. An Administrative Law Judge ("ALJ") held a hearing on July 7, 2010, and issued an unfavorable

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the court substitutes Carolyn W. Colvin for Michael J. Astrue as Defendant in this action.

decision on September 10, 2010. Tr. 25-44 (hr'g tr.); Tr. 14-21 (decision). The Appeals Council denied Plaintiff's request for review on June 4, 2012, making the ALJ's decision the final decision for purposes of judicial review. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed on July 18, 2012. ECF No. 1.

B.     Plaintiff's Background and Medical History

1.     Background

Plaintiff was born on January 13, 1956 and was 54 years old as of the July 7, 2010 administrative hearing. Tr. 29. Plaintiff completed the ninth grade and has not obtained a high school graduate equivalent degree ("GED"). *Id.* Plaintiff's work history includes cashier/cook, seasonal gift wrapper, waitress, babysitter, and secretary/dispatcher.[2] Tr. 124. As of the date of the hearing, Plaintiff lived with her son. Tr. 30.

2.     Medical History

Plaintiff went to Nason Medical Center on February 15, 2008, complaining of right hip pain and back pain following a fall in the shower. Tr. 181. X-rays of her sacrum and coccyx found no evidence of acute bony injury. Tr. 179. X-rays of Plaintiff's lumbar spine indicated mild degenerative lumbar spondylosis and no evidence of acute bony injury. Tr. 180.

Plaintiff was admitted to the Medical University of South Carolina ("MUSC") Institute of Psychiatry on July 8, 2008, with an admitting diagnosis of depression not otherwise specified ("NOS") after she expressed suicidal ideation. Tr. 185.  Plaintiff indicated recent stressors including her sons' drug use and a recent divorce. *Id.* Plaintiff reported increased alcohol use but "minimized her alcohol use throughout her hospitalization." *Id.* Plaintiff was uninterested in receiving antidepressant medications for treatment, and refused the recommended substance abuse treatment for alcohol dependence. Tr. 186. The diagnosis of depression NOS was made

---

[2]The ALJ determined Plaintiff has no past relevant work. Tr. 20.

"as it was not clear whether the patient suffers from substance abuse, mood disorder, or if it is major depression." *Id.* Plaintiff was discharged to home on July 11, 2008, with improved condition. *Id.* The only discharge medications were vitamins. *Id.* Plaintiff was instructed to follow-up with her vocational rehabilitation case worker. *Id.*

On October 24, 2008, Dr. Leslie Pelzer of Beacon Total Healthcare conducted a Comprehensive Examination of Plaintiff. Tr. 193-95. Plaintiff stated that she cannot work because of low back that radiated to her thighs giving her a numb sensation. Tr. 193. Plaintiff also stated that "she falls if she stands or walks for very long." *Id.* The physical examination noted that her neck was supple without lymphadenopathy or thyromegaly; her back was non-tender to palpation; she had a positive straight let raise bilaterally with pain with flexion at 40 degrees; and she had sensory loss to the tips of the left second, third, and fourth digits, and to the anterior lateral thighs. Tr. 194. Dr. Pelzer's assessment was "[u]ntreated hypertension, chronic low back pain, which appears to be disk-related by history; however, this has not been confirmed by an MRI scan." Tr. 195.

Dr. Mark McClain, Ph.D., of Behavioral Associates conducted a Mental Status Evaluation of Plaintiff on October 28, 2008. Tr. 197-200. Dr. McClain's summary and recommendations were:

> In summary, testing results, behavioral observation, and clinical interview reflect a 52-year-old divorced female who is currently reporting significant symptoms of depressed mood. Her report suggests that she does meet diagnostic criteria for major depressive disorder, single episode. She did indicate that she believes that she would not be as depressed if she were not experiencing money problems and anxiety symptoms. Ms. Pearce presents as being able to manage her finances independently. Ms. Pearce may wish to discuss her depressive symptoms with her primary care physician or possibly contact clinicians at the Community Mental Health Center in order to determine if services are currently available and appropriate for her.

Tr. 199.

3

Camilla Tezza, Ph.D. completed a Psychiatric Review Technique form ("PRTF") of Plaintiff on December 9, 2008. Tr. 202-15. She noted the affective disorder of "depression NOS (MUSC); maj[or] depress[ion], single episode, moderate." Tr. 205. Dr. Tezza also noted substance addiction disorder of "alcohol dependence per MUSC." Tr. 210. Dr. Tezza found Plaintiff mildly limited in the areas of Restriction of Activities of Daily Living; Difficulties in Maintaining Social Functioning; and Difficulties in Maintaining Concentration, Persistence, or Pace. Tr. 212. She noted one or two Episodes of Decompensation. *Id.*

Dr. Kerri Kolehma completed a Comprehensive Orthopedic Examination of Plaintiff on December 29, 2008. Tr. 216-19. Dr. Kolehma reported that Plaintiff's examination was "basically normal, except for decreased lumbar extension and flexion. Old radiograph positive for degenerative changes in the lumbar spine. No evidence of radicular involvement in lower extremity. She is able to walk without any device. She is able to communicate without limitations." Tr. 217.

On January 7, 2009, Dr. George T. Keller, III assessed Plaintiff's physical residual functional capacity ("RFC"). Tr. 221-28. Dr. Keller opined that Plaintiff could lift 50 pounds occasionally and 25 pounds frequently and that she was able to stand, walk, and sit for up to six hours each (with normal breaks) in an eight-hour workday. He opined that Plaintiff's ability to push and/or pull was unlimited other than as shown for lift and carry. He opined Plaintiff could frequently climb a ramp or stairs; occasionally climb a ladder, rope, or scaffold; could frequently balance, kneel, or crouch; and occasionally stoop or crawl. Tr. 223. Dr. Keller found that Plaintiff had manipulative limitations in feeling (skin receptors) "limited to occasional with left UE (given some benefit of doubt for unexplained finding of decreased sensation in left UE[)]." Tr. 224. Dr. Keller found Plaintiff had no visual, communicative, or environmental limitations.

Tr. 224-25. Dr. Keller's additional comments included summaries of past medical reports and the following:

> The allegation [of] poor circulation is not credible as there is no MDI or abnormalities found on exams. The allegation of nerve and muscle demage [sic] on the left is, perhaps, partially credible. Exams do not[e] some sensory changes in the left UE only, of unclear etiology. There is, however, no evidence of muscle damage. The allegation of being unable to stand and walk very long is not credible, as here is no evidence of any weakness or specific gait disturbance. There is evidence, by xrays only, of mild ddd [degenerative disc disease] of the c and l spines. [The] totality of the evidence supports that the claimant is capable of a range of medium exertion, with mild postural limitations.

Tr. 228.

Medical Consultant Jean Smolka, M.D. conducted a Physical RFC Assessment of Plaintiff on May 7, 2009. Tr. 229-36. Based on Plaintiff's medical records Dr. Smolka opined that Plaintiff could occasionally lift 50 pounds, frequently lift and/or carry 25 pounds, and that she was able to stand and/or walk for at least six hours (with normal breaks) in an eight-hour workday, and sit for up to six hours (with normal breaks) in an eight-hour workday. Tr. 230. Dr. Smolka opined that Plaintiff's ability to push and/or pull was unlimited other than as shown for lift and/or carry. *Id.* Dr. Smolka limited Plaintiff's ability to climb a ramp/stairs, balance, kneel, and crouch to frequently; and her ability to climb ladder/rope/scaffolds, to stoop or crawl to occasionally. Tr. 231. Dr. Smolka found occasional manipulative limitations in Plaintiff's feeling (skin receptors) due to unexplained decreased sensation in left UE, but found no visual, or communicative limitations. Tr. 232-33. Dr. Smolka opined that as an environmental limitation Plaintiff should avoid even moderate exposure to hazards. Tr. 233. Dr. Smolka commented that Plaintiff "states she has equilibrium problems, hands and standing problems but the impact of her [symptoms] does not appear to severely limit [her] ability to function independently, appropriately and effectively on a sustained basis." Tr. 236.

On August 12, 2010, subsequent to Plaintiff's administrative hearing, Harriett R. Steinert, M.D. conducted a Comprehensive Medical Exam of Plaintiff that included a Medical Source Statement of Ability to do Work-Related Activities (Physical). Tr. 237-44. Upon examination Dr. Steinert noted Plaintiff had full range of motion of the cervical spine, full range of motion of all joints in all four extremities, no sensory or motor deficits in any extremity, normal and equal fine motor and gross motor skills in both hands, and negative bilateral straight leg raises. Tr. 238. Dr. Steinert noted Plaintiff was able to walk across the room without an assistive device with a normal gait, but she was bent forward 10 degrees and could not walk on her toes and heels. *Id.* Dr. Steinert diagnosed Plaintiff with chronic neck and lumbar spine pain of uncertain etiology. *Id.* Dr. Steinert opined that Plaintiff could occasionally lift and carry up to 20 pounds, but never lift or carry over 20 pounds based on her chronic lumbar spine pain. Tr. 239. Dr. Steinert noted that Plaintiff could sit for 30 minutes, and stand or walk for ten minutes at one time without interruption; and could sit for six hours, and stand and walk for two hours total in an eight-hour work day. Tr. 240. Dr. Steinert noted Plaintiff could continuously reach, handle, finger, and feel with both hands, and push/pull only occasionally with both hands due to lumbar spine pain. Tr. 241. She opined Plaintiff could operate foot controls continuously with both feet. *Id.* Dr. Steinert opined Plaintiff could never climb stairs, ramps, ladders, or scaffolds but could occasionally balance, stoop, kneel, crouch, and crawl. Tr. 242. Dr. Steinert again based these limitations on Plaintiff's chronic lumbar spine pain. *Id.* Dr. Steinert noted no environmental limitations for Plaintiff. Tr. 243. Based on Plaintiff's physical impairments, Dr. Steinert noted no limitations in Plaintiff's ability to shop, travel without a companion for assistance, ambulate without use of an assistive device, walk a block at a reasonable pace on rough or uneven surfaces, use standard public transportation, climb a few steps at a reasonable pace with use of a single hand rail,

prepare a simple meal and feed herself, care for her personal hygiene, and use paper files. Tr. 244.

      C.      The Administrative Proceedings

At the July 7, 2010 administrative hearing, Plaintiff testified that she was 54 years old, and had completed the ninth grade, but did not have a GED. Tr. 29. Plaintiff stated that she was married but for the last two years did not know the whereabouts of her husband. *Id.* Plaintiff stated her son lived with her. Tr. 30. Her past work experience included a two-week stint at a fast-food restaurant in 2008, and various waitressing jobs for 30 years. Tr. 30-31. She stopped working as a waitress because of pain in her legs and an inability to carry things. Tr. 31. Plaintiff testified that in 1999 she was struck by a car and since that time she has gotten progressively worse, and is unable to work. Tr. 32-33. When asked by her attorney why she waited until 2008 to file her application for SSI, Plaintiff stated that before 2003 she was married and had income, and then after she was divorced from her first husband she received alimony. Tr. 33.

Plaintiff testified that she has some loss of sensation in both hands and arms. Tr. 34. She also stated that she does not have feeling in the fingertips on her left hand and that she is unable to carry anything in her left hand because she has no strength in that hand. Tr. 34-35. Plaintiff testified that she experienced pain in her upper neck if she looked down for too long, or sat for more than two hours at a time. Tr. 35. She testified that she had no feeling in her thighs, and she experienced swelling in her left leg below the knee. Tr. 36. Plaintiff testified that she had not seen a doctor because she had no medical insurance. Tr. 37. She stated that she took aspirin occasionally. *Id.* When asked if she had tried to go to the free clinic for medical care, Plaintiff said she did not go to the free clinic because they would try to schedule testing that she could not

7

afford. *Id.* She testified that she realized the free clinic could give her prescription pain medication, but Plaintiff stated that she was unable to take pain medication. *Id.*

Plaintiff testified that years ago she had what she considered a nervous breakdown due to her financial situation. Tr. 38. Plaintiff testified that she barely slept at night due to pain, and had no energy during the day. Tr. 39. Plaintiff stated that she could not bend over because "it will activate the pain." *Id.* She stated that if she stretched to reach something "it activates [her] back." Tr. 40. Plaintiff testified that she does not drive because she is afraid "the pain would cause an accident," and because she is unable to turn her body she did not feel that she would be a safe driver. *Id.* She stated that she is able to do laundry and prepare simple meals. Tr. 40-41. When asked by the ALJ what condition she thought was causing her pain and numbness, Plaintiff testified that she thought it stemmed from a disc that was possibly hitting a nerve. Tr. 42-43. She stated that she had experienced pain that was severe enough to go to the emergency room, but other than the time in 2007 when she fell in the shower, she would not go to the hospital because she could not afford it. Tr. 43. The ALJ did not take testimony from a vocational expert, but he did order a consultative evaluation of Plaintiff. *Id.*

D.     The ALJ's Findings

In his September 10, 2010 decision, the ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since July 23, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairment: cervical back and neck pain (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR416.920(d), 416.925 and 416.926).

8

    4.        After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform a reduced range of medium work. Specifically, the claimant is able to lift and carry up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour day. The claimant can only occasionally climb ladders, ropes and scaffolds and occasionally stoop and crawl.

    5.        The claimant has no past relevant work (20 CFR 416.965).

    6.        The claimant was born on January 13, 1956 and was 52 years old, which is defined as an individual closely approaching advanced age, on the date the application was filed (20 CFR 416.963).

    7.        The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

    8.        Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

    9.        Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

    10.       The claimant has not been under a disability, as defined in the Social Security Act, since July 23, 2008, the date the application was filed (20 CFR 416.920(g)).

Tr. 16-21.

II.    Discussion

    A.    Legal Framework

        1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in

9

>  death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims). An examiner must consider the following: (1) whether the claimant is working; (2) whether the claimant has a severe impairment; (3) whether that impairment meets or equals an impairment included in the Listings;[3] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis. If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if she can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20

---

[3] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the Listed impairments, found at 20 C.F.R. part 404, subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 416.925. If the medical evidence shows a claimant meets or equals all criteria of any of the Listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82-62 (1982). The claimant bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish that she is unable to perform other work. *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981); *see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

2. The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g). The scope of that federal court review is narrowly-tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case. *See id., Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002) (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).

Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005). Thus, the court must carefully scrutinize the entire record to assure there is a sound foundation for the Commissioner's findings, and that his conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

B.     Analysis

Plaintiff contends that (1) the ALJ erred by failing to consider all of Plaintiff's impairments and their combined effect on her ability to work, and (2) the ALJ erred by using the Medical Vocational Guidelines ("the Grids") in directing that Plaintiff is not disabled. Pl.'s Br. 2, ECF No. 15.

1.     Combined Effect of Plaintiff's Impairments

Plaintiff argues that the ALJ's failure to acknowledge or make any findings regarding her lumbar spine impairment or her loss of sensation in the fingertips of her left hand demonstrate that the ALJ "could not have considered their combined effect together with the effect of her chronic cervical and lumbar pain on her ability to lift, stand, or walk." Pl.'s Br. 6. The Commissioner argues that based on the ALJ's discussion of Plaintiff's lumbar spine, the failure to include the diagnosis of "chronic neck and lumbar spine pain" as a severe impairment was "merely a scrivener's error." Def.'s Br. 6, ECF No. 17. The Commissioner also asserts that

12

Plaintiff's "loss of sensation in fingertips is properly understood as a symptom rather than a 'severe impairment' in itself." *Id.*

When, as here, a claimant has more than one impairment, the statutory and regulatory scheme for making disability determinations, as interpreted by the Fourth Circuit, requires that the ALJ consider the combined effect of these impairments in determining the claimant's disability status. *See Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *Lemacks v. Astrue*, No. 8:07-2438-RBH-BHH, 2008 WL 2510087 (D.S.C. May 29, 2008), aff'd, 2008 WL 2510040 (D.S.C. June 18, 2008). Even if the claimant's impairment or impairments in and of themselves are not "listed impairments" that are considered disabling per se, the Commissioner must also "consider the combined effect of *all* of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity." 42 U.S.C. § 1382c(a)(3)(G) (emphasis added). The ALJ must "consider the combined effect of a claimant's impairments and not fragmentize them." *Walker*, 889 F.2d at 50. "As a corollary, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* The law in the Fourth Circuit is clear: in-turn consideration of multiple impairments is insufficient. The underlying ALJ decision in *Walker* had included discussion of each of claimant's impairments separately, noting "the effect or noneffect of each." 889 F.2d at 49-50. The Fourth Circuit overturned those ALJ findings because, although the ALJ "discussed each of claimant's impairments[, he] failed to analyze the cumulative effect the impairments had on the claimant's ability to work." *Id.* at 50.

Similarly, the ALJ's fragmented examination of Plaintiff's impairments in this matter is insufficient. The ALJ's declaration that "[t]he claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20

13

CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926[,]" Tr. 18, is insufficient under the law. *See Walker*, 889 F.2d at 50 (such a "finding in itself, however, is not sufficient to foreclose disability.").

Here, the ALJ found that Plaintiff suffered from the severe impairment of cervical back and neck pain. Tr. 16. In his discussion of Plaintiff's medical records the ALJ does not state whether he considers Plaintiff's lumbar spine impairment as severe or non-severe. The undersigned is unable to determine whether the ALJ's failure to include the lumbar spine impairment in his findings as a severe impairment is a mere scrivener's error. The ALJ discusses Plaintiff's sensory loss but does not state whether he considers it to be an impairment or symptom. He does note that Plaintiff's most recent consultative examination found no sensory or motor deficits in any extremity, grip strength was normal, and fine and gross motor skills were normal. Tr. 16. However, the ALJ does not discuss Plaintiff's lumbar spine impairment and sensory loss in combination with the severe impairment of cervical back and neck pain. The ALJ should have included adequate explanation of his consideration of the severe and non-severe complaints and impairments in his decision. *Walker*, 889 F.2d at 50 (holding ALJ must "adequately explain his or her evaluation of the combined effect of the impairments."). Therefore, it is recommended that the decision be remanded to the ALJ so that he can examine the combined effect of all of Plaintiff's impairments, severe and non-severe, and, in the decision on remand, explain his evaluation of the combined effect of Plaintiff's multiple impairments.

    2.    The ALJ's Use of the Grids[4]

---

[4] An ALJ may determine that sufficient jobs exist by relying on the testimony of a VE or by relying on the Medical Vocational Guidelines. The Medical Vocational Guidelines, also referred to as "the Grids," are guidelines, located at 20 C.F.R. Part 404, Subpart P, appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three "Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous

Plaintiff argues that the ALJ's use of the Grids to find Plaintiff was not disabled was error because "the Grids do not apply to a claimant who suffers from severe non-exertional impairments or who cannot perform the full range of work activity within a Grid category." Pl.'s Br. 7. Plaintiff asserts that her loss of feeling in the fingers of her left hand is a non-exertional impairment that requires expert vocational testimony to determine the effect of this impairment on Plaintiff's ability to perform a full range of medium work. *Id.* Plaintiff further argues that the ALJ's RFC determination did not contain any limits on Plaintiff's ability to push or pull and a VE was needed to determine the effect such a limitation would have on the ability to perform a full range of medium work. Pl.'s Br. 8.

The ability to push or pull is an exertional demand. *See* 20 CFR § 416.969a(b) ("When the limitations and restrictions imposed by your impairment(s) and related symptoms, such as pain, affect only your ability to meet the strength demands of jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling), we consider that you have only exertional limitations."). A nonexertional limitation affects only a claimant's ability to meet the demands of jobs other than strength demands. 20 CFR § 416.969a(c). Nonexertional limitations may include difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentration; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing; difficulty tolerating some physical features of certain work settings; or difficulty performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id.* "[A]n ALJ is not always required to consider testimony of a VE in order to find a claimant 'not disabled' when the claimant has both exertional and nonexertional limitations. If Plaintiff's nonexertional limitations have a minimal

---

work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.*

15

effect on his exertional occupational base, then a finding directed by the Grids is sufficient, and testimony by a VE is unnecessary." *Boland v. Astrue*, No. 3:08CV798-HEH, 2009 WL 2431536, at *7 (E.D. Va. Aug. 7, 2009) (internal citations omitted).

Here, the ALJ found that Plaintiff had the RFC to perform a *reduced* range of medium work with specific limitations.[5] Tr. 18. In making his finding regarding the existence of jobs Plaintiff could perform, the ALJ noted that the additional limitations had "little or no effect on the occupational base of unskilled medium work," and a finding of "not disabled" under Medical Vocational Rule 203.18 was appropriate. Tr. 21. The undersigned finds that the ALJ did not err by using the Grids to determine whether Plaintiff was disabled. However, if on remand the ALJ's finding regarding Plaintiff's combined impairments change, the remainder of the sequential evaluation process may also require additional evaluation and explanation.

III.    Conclusion and Recommendation

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the undersigned cannot determine that the Commissioner's finding is supported by substantial evidence or is without legal error.

Accordingly, pursuant to the power of the court to enter a judgment affirming, modifying, or reversing the Commissioner's decision with remand in Social Security actions, it is recommended that the Commissioner's decision be reversed and remanded for further administrative action as detailed within.

---

[5]The ALJ limited Plaintiff to lifting and carrying "up to 50 pounds occasionally and 25 pounds frequently and stand, walk, and sit for 6 hours each in an 8-hour day." Tr. 18. He also limited Plaintiff to "only occasionally climb ladders, ropes, and scaffolds and occasionally stoop and crawl." *Id.*

    IT IS SO RECOMMENDED.

May 15, 2013                                                         Kaymani D. West
Florence, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**